KCOB/KLVN, INC., and the Newton Daily News, Appellants,

v.

JASPER COUNTY BOARD OF SUPER-VISORS and Jeanne Bridenstine, Robert L. Butler, Ragan Brock, and Larry Vander Werff, Individually and As Current and Former Members of the Jasper County Board of Supervisors, Appellees.

No. 90–1032.

Supreme Court of Iowa.

July 17, 1991.

Brad McCall of the Brierly Law Office, Newton, for appellants.

Robert G. Allbee and Ivan T. Webber of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, and James R. Wilson, County Atty., for appellees.

Eric P. Sloter and Joseph A. Quinn of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for amicus curiae Iowa Newspaper Ass'n.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

SCHULTZ, Justice.

KCOB/KLVN, Inc., a radio station, and the Newton Daily News filed an action against the Jasper County Board of Supervisors (Board) and its individual members, seeking judicial enforcement of the requirements of Iowa's open meetings law, Iowa Code chapter 21.[1]  A hearing was held to the court.  The trial court concluded that plaintiffs had established one of eight al-

---

1.  All statutory references are to the 1989 Iowa Code.

leged violations and had failed to establish the other seven alleged violations. On appeal, plaintiffs contend that the trial court's interpretation and application of Iowa Code chapter 21 to the facts of this case was erroneous. We affirm the trial court.

On appeal, plaintiffs essentially challenge the trial court's application of three legal principles to the alleged violations. We examine plaintiffs' general and specific claims of error.

I. *Advance notice of meetings.* Plaintiffs urge that the trial court erroneously concluded that giving advance notice to the public of the content of an announced public meeting is not a purpose of the Iowa open meetings law. Plaintiffs refer to certain language in the trial court's ruling in support of their contention that the court's view is contrary to our statutes and appellate decisions. Plaintiffs did not cite authority for this contention, however. Consequently, we turn to the language of chapter 21 to determine its purpose.

■ The legislature suggested that the purpose of chapter 21 is to assure "that the basis and rationale of governmental decisions ... are easily accessible to the people." Iowa Code § 21.1.[2] We stated that the purpose of open meetings statutes is to require meetings of governmental bodies to be open and permit the public to be present. *Dobrovolny v. Reinhardt*, 173 N.W.2d 837, 840–41 (Iowa 1970). As we shall discuss later, even though notice is an important tool utilized to accomplish openness, it is not the primary purpose of chapter 21. Thus, plaintiffs' characterization of advance notice of the content of a public meeting as a purpose of chapter 21 is an overstatement.

We now turn to plaintiffs' specific complaints and determine whether the trial court's application of the law was correct.

A. *Meeting of May 23, 1989.* The tentative agenda for May 23, 1989, listed "Industries Council—Mr. Jack Lipovac." The

subject matter discussed was the firing of a custodian. Plaintiffs claim that the notice contained in the agenda was not sufficiently detailed to meet the legislative standard in Iowa Code section 21.4 which requires that notice be given "in a manner reasonably calculated to apprise the public...." Iowa Code § 21.4(1).

■ Thus, the issue to be resolved is not whether the notice given by the governmental body could have been improved, but whether the notice sufficiently apprised the public and gave full opportunity for public knowledge and participation. In determining whether the public was sufficiently apprised, we may consider the public's knowledge of an issue and actual participation in events in light of the history and background of that issue. *Cf. Keeler v. Iowa State Bd. of Pub. Instruction*, 331 N.W.2d 110, 111 (Iowa 1983). We agree with the trial court's conclusion that the sufficiency of the detail on the tentative agenda must be viewed in the context of surrounding events.

■ Evidence in the record indicates that the issue of firing the custodian had been on a previous agenda and previously discussed. The evidence also reveals that Lipovac had appeared before the Board on an earlier termination hearing. Furthermore, the evidence shows that a well known fact in the community was that the Industries Council was hired to set up termination hearings and that the termination of the particular employee in this case was well publicized in the community. Therefore, we hold that there was sufficient evidence to substantiate the trial court's ruling that the agenda provided sufficient notice. Consequently, the trial court did not err in its conclusions of law.

B. *Meeting of January 31, 1989.* During the January 31, 1989, meeting of the Board, the Director of the Jasper County Department of Human Services appeared and asked the Board to approve a case

2. This chapter seeks to assure, through a requirement of open meetings of governmental bodies, that governmental decisions and their basis and rationale are easily accessible to the people. Ambiguity in the construction or application of this chapter should be resolved in favor of openness.

management plan dealing with funding of a departmental program. This matter was not on the agenda. After discussing this matter, the Board approved the request.

Plaintiffs allege that the Board's deliberations and actions on the case management plan without giving prior notice violated chapter 21. In rejecting this claim, the trial court made no separate findings and conclusions. However, the court did refer to this claim along with other claimed notice violations and noted that these claims were presented as part of the reports of administrative personnel. Neither party sought to clarify the trial court's ruling by a posttrial motion seeking an enlargement or amendment of the court's findings and conclusions. *See* Iowa R.Civ.P. 179(b).

▪ When faced with ambiguity in the trial court's ruling, we are guided by certain principles. The findings of the trial court are liberally construed and will be construed to uphold rather than defeat a judgment in cases of doubt or ambiguity. *Schnabel v. Vaughn*, 258 Iowa 839, 845, 140 N.W.2d 168, 172 (1966); *Sheahan v. Plagge*, 255 Iowa 182, 187, 121 N.W.2d 120, 123 (1963). A court decision which is proper on any ground supported by evidence in the record will not be disturbed. *Schnabel*, 258 Iowa at 844, 140 N.W.2d at 172.

▪ The first question is whether a governmental body can act on an item which was not included on a tentative agenda. In a separate discussion not specifically directed at this question, the trial court concluded that chapter 21 obligates a governmental body to publish a "tentative agenda," but does not prohibit discussion or action on an item which was not included on the "tentative agenda." However, the court added that an item not included on the agenda cannot be discussed if the governmental body had predetermined to discuss an item and omit it from the agenda. We agree with these conclusions.

Meetings of governmental bodies shall be preceded by "notice of the time, date, and place of each meeting, and its tentative agenda...." Iowa Code § 21.4. The twenty-four hour advance notice requirement can be reduced or the place changed by a good cause showing that "such notice is impossible or impractical...." Iowa Code § 21.4(2).

In this case, the required notice was given, but a matter came up during the meeting that was not on the tentative agenda. Section 21.4 describes the agenda as "tentative" and there is no specific provision prohibiting discussion of an item not on the agenda. The adjective "tentative" is defined as "not fully worked out or developed." *Webster's New Collegiate Dictionary* 1193 (150th Anniversary ed. 1981). We conclude that the legislature intended that the content of a tentative agenda notice can be subject to change. On the other hand, we also recognize that the purpose of this chapter may be thwarted if a governmental body misleads the public by preparing an agenda that is calculated to mislead the public by deception or omission of items to be discussed.

▪ We believe that a proper construction of the notice provision in section 21.4 allows discussion and action on emergency items that are first ascertained at a meeting for which proper notice was given. The formality of including emergency items on a tentative agenda is not required. However, if action can be reasonably deferred to a later meeting, this should be done. Such a construction would avoid the impracticable result of delaying discussion and action until an emergency meeting can be called, notice given, and the meeting held. In construing open meeting provisions, relevant statutory provisions must be read as a whole and given a sensible and logical construction to avoid impractical results. *Telegraph Herald, Inc. v. City of Dubuque*, 297 N.W.2d 529, 532 (Iowa 1980).

▪ The facts of this case show that the county would lose money and would be unable to provide required services unless immediate action was taken on funding of the departmental program. This item was discussed fully and the minutes of the meeting were taped. Proper notice of the regular meeting had been given and it was too late to amend the tentative agenda. Based on these findings, we hold that no

violation occurred by discussing the departmental program.

■ Plaintiffs also urge that a deviation from the tentative agenda requirement requires compliance with Iowa Code section 21.4(2). This subsection requires that minutes of the meeting state a justification for departing from the prohibition against holding a meeting when less than twenty-four hour notice is given. This subsection applies only to cases in which less than twenty-four hour notice of a meeting is given. Thus, it does not apply to this case because twenty-four hour notice of the meeting was given. Furthermore, this subsection does not require that the minutes include an explanation of a deviation from the tentative agenda when the twenty-four notice requirement is met. Perhaps such a requirement would be wise and logical; however, the legislature should specify the violations that lead to punitive results.

II. *Intent and design.* Plaintiffs maintain that the trial court erred in concluding that an intent and design to conceal or misrepresent is necessary in order to establish a violation of chapter 21. They urge that intent is relevant only when considering the enforcement remedies after violations have been established. We believe that the trial court properly considered intent.

■ We generally agree that a lack of wrongful intent to violate the open meetings law cannot excuse noncompliance. *See Polillo v. Deane,* 74 N.J. 562, 577, 379 A.2d 211, 218 (1977); *Hilliary v. State,* 630 P.2d 791, 794 (Okla.Crim.App.1981). Iowa Code section 21.6(4) provides that ignorance of legal requirements is no defense. On the other hand, the legislature provided that a gathering of board members for ministerial purposes is not a meeting within the meaning of chapter 21 "when there is no discussion of policy or no intent to avoid the purposes of this chapter." Iowa Code § 21.2(2); *see also Telegraph Herald,* 297 N.W.2d at 533. Consequently, the question of intent becomes relevant only when there is an issue of whether a meeting occurred. As we discussed previously, intent is also relevant in determining the omission of an item from an agenda.

We next examine plaintiffs' specific complaints regarding intent and determine if the trial court improperly considered the issue of intent.

■ A. *Budget session.* In their petition, plaintiffs allege that the Board violated chapter 21 by holding a "budget session" on February 1, 1989. The trial court's ruling states that plaintiffs concede that no budget session was held on that date. The court also states that defendants concede they periodically held other budget sessions without giving notice. Without commenting on the effect of plaintiffs' concession, the court discussed the other budget sessions and found that these ministerial sessions were not meetings. The court covered both conditions that prevent a ministerial gathering from becoming a meeting by finding that plaintiffs did not establish that policy-making occurred at the meetings and that there was no intention that these gatherings be held for the purpose of discussing policy.

We reject plaintiffs' argument that the trial court improperly relied on intent. The trial court's reference to intent reveals its finding of an absence of "intent to avoid the purpose of this chapter," the second exception to the occurrence of a meeting. *See* Iowa Code § 21.2(2). Plaintiffs do not challenge the court's finding that they did not establish that policy-making occurred at these gatherings. Thus, we conclude that there was no showing that a meeting, as defined in chapter 21, occurred.

■ B. *Closed session.* The trial court found that the Board did not violate chapter 21 by holding a closed session on June 16, 1989. Plaintiffs urge that the evidence clearly established that the Board "went into closed session ... without first stating in open session the reason for going into closed session, without voting in open session as to whether it would go into closed session, and without having the minutes reflect the vote and the reason for the closed session, all as required in Iowa Code Section 21.5." Plaintiffs maintain that the court incorrectly determined that the Board

substantially complied with the statutory requirements of section 21.5 because it believed that there must be some intent to violate the chapter.

When a governmental body goes into closed session, Iowa Code section 21.5(2) requires that "[t]he vote of each member on the question of holding the closed session and the reason for holding the closed session by reference to a specific exemption under this section shall be announced publicly at the open session and entered in the minutes." Even though the trial court determined that the Board committed a technical violation at the June 16 meeting, the court concluded that the Board substantially complied with the statutory requirements in Iowa Code section 21.5.

The tentative agenda for the June 16 meeting indicated that there would be a closed meeting pursuant to an employee's request. The Board then acted in reverse order. The deputy auditor, the secretary of the meeting, was asked to leave and then the Board voted to go into a closed session. Due to the deputy auditor's absence, no minutes of the vote of each member or the reason for holding the closed session were taken as required by chapter 21. A tape recorder, turned on before the June 16 meeting started, revealed that the deputy auditor was asked to leave and that a vote was taken. The tape was played as evidence at trial. Although notice of the June 16 meeting was posted, no one attended the meeting except Board members, the employee, and the deputy auditor. With the exception of the deputy auditor, no members of the public were unlawfully excluded from the closed meeting.

We agree with the trial court's finding that the Board was in substantial compliance with Iowa Code section 21.5(2). Essentially, the Board satisfied the statutory requirements but the deputy auditor was excused before the vote and could not record the minutes.

▆ When procedures are imposed on county governmental bodies, the standard is substantial rather than absolute compliance with the statutory requirements. Iowa Code §§ 331.301(1), (5). We have not

previously passed directly on this issue in an open meetings case. Other jurisdictions have construed their open meetings laws to require substantial compliance with statutory requirements when a technical violation has not harmed the complaining party. *City of Flagstaff v. Bleeker*, 123 Ariz. 436, 438–39, 600 P.2d 49, 51 (Ct.App.1979); *Stevens v. Board of County Comm'rs*, 10 Kan.App.2d 523, 526, 710 P.2d 698, 701 (1985); *McConnell v. Alamo Heights Indep. School Dist.*, 576 S.W.2d 470, 474–75 (Tex.Civ.App.1978). We agree that a substantial compliance test is proper.

In summary, we conclude that the Board's actions were consistent with the meaning and the purpose of the open meetings law and that nothing more than a procedural irregularity occurred. Therefore, we hold that defendants did not violate chapter 21.

▆ C. *Creation and abolishment of the CSALA program.* The trial court also determined that the Board's acts of creating and later abolishing the CSALA program had not violated chapter 21. Plaintiffs attribute the court's action to a belief that intent must be shown in order to establish a violation.

The administrator of the county care facility made a presentation to the Board on the CSALA program, which provided supervised apartment living for mentally ill individuals. Two successive Board chairpersons signed leases for the program based on the Board's approval of written reports. The program was later eliminated. Plaintiffs contend that the Board members deliberated and took action on this program without giving prior notice of the meeting as required by chapter 21.

The trial court found no evidence that the actions of the Board chairpersons were based on private discussions and deliberations with other Board members. The members of the Board denied such private discussions. Plaintiffs urge that meetings must have preceded signing of the leases. One Board chairperson testified that both he and the preceding chairperson signed leases without consulting the other Board

members, and that it was a common practice in Jasper county for the chairperson to sign documents which had not been acted upon by the Board.

We are not persuaded that the trial court believed that intent must be shown to establish a violation of chapter 21. The trial court found that the two Board chairpersons "felt satisfied that they could sign leases...." This statement merely indicates that the Board's practice was to allow its chairpersons to enter contracts without the approval of the other two members of the Board. The legality of this practice is not the issue before us.

At trial, the issue of whether a majority of the Board members had meetings to discuss or deliberate on the CSALA program was hotly contested. The trial court found against plaintiffs on this issue. We believe defendants' testimony denying that such meetings occurred presents substantial evidence to support this finding. Thus, we conclude that the trial court correctly applied the law and committed no legal errors on the CSALA issue.

III. *Burden of proof.* Plaintiffs maintain that they presented prima facie evidence of violations and that the trial court erred by failing to impose the burden of proving the absence of any violations upon defendants. Iowa Code section 21.6(2) provides as follows:

> Once a party seeking judicial enforcement of this chapter demonstrates to the court that the body in question is subject to the requirements of this chapter and has held a closed session, the burden of going forward shall be on the body and its members to demonstrate compliance with the requirements of this chapter.

We note that this section changes the burden of going forward with the evidence rather than shifting the burden of proof from plaintiffs to defendants. The trial court was silent on whether section 21.6(2) was applicable. Even though no motion was made asking the court to enlarge its findings or conclusion, we address plaintiffs' contention that the trial court did not adopt the statutory standard in section 21.-6(2) in the two following situations.

A. *Purchase of city-county building.* In its petition, plaintiffs urge that the Board violated chapter 21 by deliberating and taking action on December 16, 1988, to purchase the city-county building from the city of Newton without providing the required prior notice. The trial court found that the evidence did not establish that this meeting was held.

■■■ Plaintiffs' allegation of the meeting arises out of a letter sent by the Board chairperson to the city administrator naming a price for the purchase of the building. In this letter, the author used the pronoun, "we" four times. Plaintiffs urge that use of the pronoun "we" suggests that the Board held a secret meeting. The chairperson testified that a secret meeting did not occur and that the pronoun "we" in the letter refers to the county budget director, the city manager, and herself.

Our review of the record reveals that plaintiffs did not demonstrate that the Board held a secret meeting. Even unexplained, the letter provides mere speculation rather than substantive proof of a meeting. No other evidence was presented in support of this alleged meeting. Uncontradicted testimony indicated that the other Board members learned of the chairperson's negotiations from the county budget director rather than from a meeting of the Board. We conclude that the evidence was insufficient to shift the burden of going forward with the evidence from plaintiffs to defendants under Iowa Code section 21.-6(2).

B. *CSALA programs.* Plaintiffs essentially make the same claim concerning the CSALA program. Specifically, plaintiffs contend that they presented a prima facie showing of secret meetings which the defendants should have been required to rebut. Plaintiffs' claim is based on the fact that action was taken on the CSALA program. Plaintiffs urge that this fact infers that discussions and deliberations occurred among Board members prior to action being taken.

The problem with plaintiffs' contention is that the trial court made no findings to

**178**

support this inference. It found that the CSALA program came before the Board in administrative reports which were approved and became a matter of public record. Plaintiffs make no claim that these meetings were in violation of chapter 21. The trial court made no finding that other meetings occurred. Furthermore, no motion to enlarge the court's finding was sought.

■ Plaintiffs had the burden to demonstrate that a majority of the Board met without giving the required notice and discussed the formation and dissolution of the CSALA program. Plaintiffs did not present any evidence beyond its own speculation that the Board met in a closed session to discuss this matter. Consequently, we hold that plaintiffs did not present evidence sufficient to trigger the effect of section 21.6(2).

IV. *Summary.* We hold that the judgment of the trial court is affirmed. Even though not discussed in this opinion, we have considered all of the contentions advanced by plaintiffs and conclude that none of them would alter the result of our affirmance of the trial court.

AFFIRMED.